## WILLIAM THOMPSON v. THE STATE.

*Although an indictment for theft charged that the defendant " did kill, steal, and carry away a hog," it was not an indictment for malicious mischief, under article 713 of the Penal Code, but under article 766, for the theft of such animals. (Paschal's Dig., Arts. 2344, 2410.)*

*The effect of charging the killing and then stealing and carrying away the property brought the offense within the definition of general theft described in article 745, which is punished by articles 756 and 757 of the Code. (Paschal's Dig., Arts. 2381, 2394, 2395.)*

*Article 766 relates to the stealing of live animals, and the general charge of stealing animals raises the presumption of a live animal; and the averment, that he first killed and then stole the animal, was tantamount to an averment of stealing so many pounds of pork.*

*[See the circumstantial evidence in this case, which was held to be sufficient to sustain a conviction against a freedman for hog-stealing.]*

APPEAL from Harrison. The case was tried before Hon. M. D. ECTOR, one of the district judges.

The indictment charged that William Thompson, a freedman, &c., one certain hog, &c., "unlawfully and feloniously did kill, take, steal, and carry away, from and out of the possession of him, the said J. H. Calloway, without his consent; and with the intent of him, the said William Thompson, freedman of color, then and there to deprive him, the said J. H. Calloway, of the value of said hog, to

wit, $20," &c., &c. Counsel were appointed for the accused. He plead not guilty, and was convicted and sentenced to two years' imprisonment in the penitentiary.

The proof was, that the accused was hired on Calloway's place; that a witness had found the head of a hog freshly killed; that he followed the tracks from that place (which was near the edge of the orchard) to the house of the accused in the orchard. On the next day he found a box which contained fresh meat, (pork.) Witness recognized the box as the property of defendant. A freed boy, stepson of the prisoner, had smelled fresh pork cooking in prisoner's cabin on the night of the supposed killing; said that a board had been torn off from the house of the prisoner, through which the meat had been removed; the prisoner told the witness that he had buried the box in the orchard; witness knew the box when he saw it; it was the prisoner's box. J. H. Calloway, on the evening after the first witness had made the discovery in the morning, had followed the track pointed out to him by first witness, from the place where the hog's head had been found; the track was fresh, and the only track leading in the direction of the prisoner's house; the track led directly from the head to the cabin of defendant. He then went to where the box which contained the meat was buried; the hog was worth $15. The venue was proved. (The record contained no proof of a missing hog, or the ownership of the hog, that any hog was stolen, or any identity of any hog, or any other fact than the foregoing.)

The court instructed the jury in the language of article 745 of the Penal Code. (Paschal's Dig., Art. 2381, Note 683.)

And as to punishment, the judge gave in charge articles 756 and 757. (Paschal's Dig., Arts. 2393, 2394.)

The accused asked for a charge under the statute about malicious mischief, which was refused.

The defendant moved in arrest of judgment, and also for

a new trial, on grounds noticed in the opinion, and also because of the insufficiency of the evidence. These motions being overruled, the defendant appealed.

No brief for the defendant has been furnished to the *Reporter.*

*William M. Walton, Attorney General,* for the state.

WILLIE, J.—It is charged in the indictment, that the appellant "unlawfully, fraudulently, and feloniously did kill, take, steal, and carry away" one certain hog, of the value of $20, the property of J. H. Calloway. In the motion to arrest the judgment objection is made to the indictment that it charges two separate and distinct offenses, viz : malicious mischief and theft; that, by making use of the word "kill," the offense is brought within the provisions of article 713 of the Penal Code, which punishes the willful killing of swine or other animals belonging to another; and that the words "take, steal, and carry away," charge an offense in violation of article 766 of said code, providing a punishment for theft of such animals. We are of opinion that this objection is not well taken. The effect of using the above-quoted language in the indictment was to charge the defendant with first killing the hog and then stealing his dead body, which is an offense different from that set forth in either of the sections above cited. It is defined in article 745 of the code, and the punishment prescribed in articles 756 and 757 of the same. That portion of the code which provides a penalty for stealing domestic animals, specifying them by name, was intended to apply to such animals when in a live state. (Rex v. Puckering, 1 Mood, 242; Rex v. Edwards & Walker, Russ. & Ry., 497.)

And where an indictment charges a defendant with stealing a domestic animal, without alleging whether or not it was alive at the time, the law presumes that the intention

is to allege the theft of a living animal. (See authorities cited above, and Whart. Crim. Law, § 359.) It was no doubt for the purpose of rebutting this presumption, and of charging the defendant specifically and certainly with theft of a dead hog, that the averment in reference to the killing was introduced previously to that of the taking and carrying away. By the act of killing, the animal was placed in the same condition with any other species of inanimate property, and to steal it was the same offense as the stealing of so many pounds of pork. The indictment was therefore properly framed under the 745th article of the code, and there was no error in refusing to arrest the judgment on the grounds set forth in the motion.

Neither did the court err in refusing the charge asked by defendant, for it was wholly inapplicable to the crime charged, and to the facts proved upon the trial. The offense established by the proof against the defendant was theft, and not malicious mischief. The willful killing of a domestic animal, with intent to injure the owner, would constitute the latter offense; but when the facts go further, as they did in this case, and show a felonious and fraudulent design to appropriate the property to the use of the offender, and deprive the owner of the value of the same, the offense assumes the graver character of theft, and is punishable by confinement in the penitentiary. This intent was not only shown in this case, but the actual appropriation of the property to the use and benefit of the defendant.

The facts established on the trial were amply sufficient to warrant the verdict found against the defendant, the charge of the court fully expounded to the jury the law of the case, and there was no error in any of the rulings of which the appellant has complained. The judgment of the court below is therefore

AFFIRMED.